# CIVIL COVER SHEET

**APPENDIX H**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Joseph P. Maher
Juli' A. D'Ancona-Maher

**DEFENDANTS**

Officer Jeffrey Renninger
Chief of Police Allen W. Stiles
---- Please see continuation sheet

**(b)** County of Residence of First Listed Plaintiff    Lehigh
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant     _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Joseph P. Maher, Esq.
3225 Alton Street, Allentown PA 18103    484.264.8005

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

❏ 1   U.S. Government
     Plaintiff

X 3   Federal Question
     (U.S. Government Not a Party)

❏ 2   U.S. Government
     Defendant

❏ 4   Diversity
     (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)    and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 610 Agriculture | ❏ 422 Appeal 28 USC 158 | ❏ 400 State Reapportionment |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 362 Personal Injury - | ❏ 620 Other Food & Drug | ❏ 423 Withdrawal | ❏ 410 Antitrust |
| ❏ 130 Miller Act | ❏ 315 Airplane Product |    Med. Malpractice | ❏ 625 Drug Related Seizure |    28 USC 157 | ❏ 430 Banks and Banking |
| ❏ 140 Negotiable Instrument |    Liability | ❏ 365 Personal Injury - |    of Property 21 USC 881 | | ❏ 450 Commerce |
| ❏ 150 Recovery of Overpayment | ❏ 320 Assault, Libel & |    Product Liability | ❏ 630 Liquor Laws | **PROPERTY RIGHTS** | ❏ 460 Deportation |
|    & Enforcement of Judgment |    Slander | ❏ 368 Asbestos Personal | ❏ 640 R.R. & Truck | ❏ 820 Copyrights | ❏ 470 Racketeer Influenced and |
| ❏ 151 Medicare Act | ❏ 330 Federal Employers' |    Injury Product | ❏ 650 Airline Regs. | ❏ 830 Patent |    Corrupt Organizations |
| ❏ 152 Recovery of Defaulted |    Liability |    Liability | ❏ 660 Occupational | ❏ 840 Trademark | ❏ 480 Consumer Credit |
|    Student Loans | ❏ 340 Marine | **PERSONAL PROPERTY** |    Safety/Health | | ❏ 490 Cable/Sat TV |
|    (Excl. Veterans) | ❏ 345 Marine Product | ❏ 370 Other Fraud | ❏ 690 Other | | ❏ 810 Selective Service |
| ❏ 153 Recovery of Overpayment |    Liability | ❏ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ❏ 850 Securities/Commodities/ |
|    of Veteran's Benefits | ❏ 350 Motor Vehicle | ❏ 380 Other Personal | ❏ 710 Fair Labor Standards | ❏ 861 HIA (1395ff) |    Exchange |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle |    Property Damage |    Act | ❏ 862 Black Lung (923) | ❏ 875 Customer Challenge |
| ❏ 190 Other Contract |    Product Liability | ❏ 385 Property Damage | ❏ 720 Labor/Mgmt. Relations | ❏ 863 DIWC/DIWW (405(g)) |    12 USC 3410 |
| ❏ 195 Contract Product Liability | ❏ 360 Other Personal |    Product Liability | ❏ 730 Labor/Mgmt.Reporting | ❏ 864 SSID Title XVI | ❏ 890 Other Statutory Actions |
| ❏ 196 Franchise |    Injury | |    & Disclosure Act | ❏ 865 RSI (405(g)) | ❏ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ❏ 892 Economic Stabilization Act |
| ❏ 210 Land Condemnation | ❏ 441 Voting | ❏ 510 Motions to Vacate | ❏ 790 Other Labor Litigation | ❏ 870 Taxes (U.S. Plaintiff | ❏ 893 Environmental Matters |
| ❏ 220 Foreclosure | ❏ 442 Employment |    Sentence | ❏ 791 Empl. Ret. Inc. |    or Defendant) | ❏ 894 Energy Allocation Act |
| ❏ 230 Rent Lease & Ejectment | ❏ 443 Housing/ | **Habeas Corpus:** |    Security Act | ❏ 871 IRS—Third Party | ❏ 895 Freedom of Information |
| ❏ 240 Torts to Land |    Accommodations | ❏ 530 General | |    26 USC 7609 |    Act |
| ❏ 245 Tort Product Liability | ❏ 444 Welfare | ❏ 535 Death Penalty | | | ❏ 900Appeal of Fee Determination |
| ❏ 290 All Other Real Property | ❏ 445 Amer. w/Disabilities - | ❏ 540 Mandamus & Other | | |    Under Equal Access |
| |    Employment | ❏ 550 Civil Rights | | |    to Justice |
| | ❏ 446 Amer. w/Disabilities - | ❏ 555 Prison Condition | | | ❏ 950 Constitutionality of |
| |    Other | | | |    State Statutes |
| | X 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

X 1 Original Proceeding    ❏ 2 Removed from State Court    ❏ 3 Remanded from Appellate Court    ❏ 4 Reinstated or Reopened    ❏ 5 Transferred from another district (specify)    ❏ 6 Multidistrict Litigation    ❏ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
42 U.S.C. §1983
Brief description of cause:
Civil Rights - police misconduct with pendent state claims

## VII. REQUESTED IN COMPLAINT:

❏ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23    **DEMAND $** > $150,000    CHECK YES only if demanded in complaint:
**JURY DEMAND:**    X Yes   ❏ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):    JUDGE _____    DOCKET NUMBER _____

DATE
7/1907

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.    (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.    Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.    Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.    Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.    Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.    Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**            Example:        U.S. Civil Statute: 47 USC 553
                                    Brief Description: Unauthorized reception of cable service

**VII.    Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.    Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

CIVIL COVER SHEET CONTINUATION - Maher v. Renninger, et al.

Additional Defendants:

The Township of Salisbury
The Honorable Karen C. Devine

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.**

Address of Plaintiff:_____3225 Alton Street, Allentown PA 18103_____

Address of Defendant:_____3000 S. Pike Avenue, Allentown PA 18103_____

Place of Accident, Incident or Transaction:___Salisbury Township, Pennsylvania_____
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))     Yes☐   No X

Does this case involve multidistrict litigation possibilities?     Yes☐   No X

*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
     Yes☐   No X

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?     Yes☐   No X

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?     Yes☐   No X

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. X Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
   (Please specify)

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify)

## ARBITRATION CERTIFICATION
*(Check appropriate Category)*

I,__John P. Karoly, Jr._____, counsel of record do hereby certify:

   X  Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

   Relief other than monetary damages is sought.

DATE:___9/19/07_____                         _____23693_____
                              Attorney-at-Law                 Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE:___9/19/07_____                         _____23693_____
                              Attorney-at-Law                 Attorney I.D.#

CIV. 609 (4/03)

**APPENDIX I**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Joseph P. Maher, et ux. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| Officer Jeffrey Renninger, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a)  Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.                    (   )

(b)  Social Security – Cases requesting review of a decision of the Secretary of Health
      and Human Services denying plaintiff Social Security Benefits                          (   )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   (   )

(d) Asbestos – Cases involving claims for personal injury or property damage from
      exposure to asbestos.                                                                  (   )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
      commonly referred to as complex and that need special or intense management by
      the court. (See reverse side of this form for a detailed explanation of special
      management cases.)                                                                     ( X )

(f) Standard Management – Cases that do not fall into any one of the other tracks.           (   )


| 7/19/07 | Joseph P. Maher | *[signature]* |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for Plaintiffs** |
| 484.264.8005 | 610.791.5078 | joemaher@fast.net-- |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH P. MAHER,** | : | |
| 3225 Alton Street | : | |
| Allentown, PA. 18103-6456 | : | |
| | : | |
| *and* | : | |
| | : | |
| **JULI' A. D'ANCONA-MAHER,** | : | |
| 3225  Alton Street | : | |
| Allentown, PA. 18103-6456 | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **OFFICER JEFFREY RENNINGER,** | : | **No.** |
| Individually and in his official capacity | : | |
| as a member of the Salisbury Township | : | |
| Police Department, | : | |
| 3000 S. Pike Avenue | : | |
| Allentown, PA. 18103 | : | |
| | : | |
| **CHIEF OF POLICE ALLEN W. STILES,** | : | |
| Individually and in his official and | : | |
| supervisory capacity as Chief of the | : | |
| Salisbury Township Police Department, | : | |
| 3000 S. Pike Avenue | : | |
| Allentown, PA. 18103 | : | |
| | : | |
| **THE TOWNSHIP OF SALISBURY,** | : | |
| 2900 S. Pike Avenue | : | |
| Allentown, PA. 18103 | : | |
| | : | |
| **and** | : | |
| | : | |
| **THE HONORABLE KAREN C. DEVINE,** | : | |
| Individually and in her official capacity as a | : | |
| Magistrate of the Commonwealth of | : | |
| Pennsylvania, | : | |
| 506 Court Street | : | |

Allentown, PA. 18103                    :
      **Defendants**                    :

## COMPLAINT

**AND NOW COME** the Plaintiffs, Joseph P. Maher and Juli' A.. D'Ancona-Maher,

Husband and Wife, by and through their undersigned legal counsel of record, Joseph P.

Maher, Esquire, and, by way of Complaint against the named Defendants upon a cause or

causes of action, do hereby allege and aver as follows:

**I.    JURISDICTION AND VENUE**

1.    This action is instituted under the United States Constitution, particularly under the

provisions of the First, Fourth, Fifth and Fourteenth Amendments, and under federal

law, particularly the Civil Rights Act of 1871, hereinafter referred to as the "Act", as

amended, 42 U.S.C. Sections 1983, 1985 and 1988.

2.    This Court has jurisdiction in this matter pursuant to 28 U.S.C.§1331, §1343 (3),

§1343 (4) and §1367, regarding the principles of pendent and supplemental

jurisdiction over related state law claims.

3.    Venue in the Eastern District is properly laid pursuant to 28 U.S.C. §1391, in so far

as the following alleged unlawful conduct complained of in this Complaint, which

forms the factual and legal basis of the Plaintiff's claims, arose within the

geographical limits of this district.

**II.    PARTIES**

4.    Plaintiff, Joseph P. Maher, is an adult individual, current residing at 3225 Alton

-2-

Street, Allentown, PA. 18103-6456.

5.    Plaintiff, Juli' A. D'Ancona-Maher, is an adult individual, currently residing at 3225 Alton Street, Allentown, PA. 18103-6456, and is the wife of Plaintiff, Joseph P. Maher.

6.    Defendant, Officer Jeffery Renninger, (hereinafter referred to as "Renninger") is an adult individual who is currently serving in his capacity as a sworn officer with the rank of Officer in the Salisbury Township Police Department, and who is entrusted with  the power to enforce laws of the Commonwealth and the Township of Salisbury.  Defendant Renninger is entrusted to protect the Constitutional rights of those he encounters, and who at all times relevant hereto was acting within the scope of his duties and authority under color or title of sate or municipal public law and acted in concert with one or more of the Defendants in the performance of their conduct or actions.  Renninger was acting under the color of law and within the scope of his employment at all times relevant to this action or was acting independently.

7.    Defendant, Chief of Police, Allen W. Stiles, is an adult individual (hereinafter referred to as "Stiles"), who is a sworn member of the Salisbury Township Police Department who is responsible for the formulation and /or implementation of practices, policies, customs, procedures, discipline, control and assignment of officers, as well as the day-to-day operation and overseeing and command and control of all segments of the Police Department, and who at all times relevant hereto was acting within the

-3-

scope of his duties and authority, under color or title of state or municipal public law or ordinance and supervised or controlled one the other individual Defendant Renninger herein his conduct or actions, or acted in concert with him in the performance of their conduct or actions or was acting independently. Defendant Stiles is the ultimate authority for the staffing, promotions and operational functions of the Salisbury Township Police Department..

8.  Defendant, Township of Salisbury (hereinafter referred to as the "Township"), is a governmental entity within the Commonwealth of Pennsylvania empowered to establish, regulate and control its Police Department for enforcement of laws within its jurisdiction and for purpose of protecting and preserving the persons and property within the geographical and legal jurisdiction of the Township.

9.  Defendant, The Honorable Karen C. Devine) hereinafter referred to as "Devine") is a magisterial district judge of the Commonwealth of Pennsylvania within the present boundaries of the County of Lehigh and is entrusted with the power to enforce the laws of the Commonwealth of Pennsylvania, with the power to enforce and protect the constitutional rights of those persons she encounters, and at all times hereto was acting under her authority and color of law or acted independently. In her position as Magistrate she has the authority to conduct preliminary arraignments and imprison individuals who come before her charged with criminal offenses and to set reasonable bail for the release of said individuals.

III.  FACTUAL ALLEGATIONS

-4-

10.   On or about July 19, 2005, Plaintiff Joseph P. Maher (hereinafter sometimes referred

to as "Mr. Maher"), was a member of the Supreme Court of Pennsylvania bar and

admitted to practice law in the Commonwealth of Pennsylvania since November 1,

1976.  Earlier that year in the primary held on May 17, 2005, Mr Maher had run for

the position of Magistrate for District 31-1-08, which district was comprised of the

Township of Salisbury and the Borough of Fountain Hill. Mr. Maher did not with the

primary, but rather was defeated by the long-time incumbent, The Honorable Anthony

G. Rapp, Jr.  During the course of the campaign Mr. Maher had verbally and in writing

touted his experience as an attorney and had expressed his view that magistrates in the

Commonwealth should be attorneys rather than lay persons who simply had to pass an

examination to be qualified to run.

11.   At the time he was a 54-year old married individual who was in excellent health and

physical condition.

12.   On or about te early morning hours of Saturday, July 16, 2005, Mr. Maher and Juli

A. D'Ancona-Maher (hereinafter sometimes referred as "Mrs. Maher") had a verbal

discussion outside their residence located at 3225 Alton Street while Mr. Maher was

situated in his motor vehicle and Mrs. Maher was standing nearby.

13.   Mr. Maher at the conclusion of their discussion drove away. However, unfortunately,

the remotely controlled garage door of the residence had been activated and the garage

door from which Mr. Maher had existed the residence in his vehicle had closed and

-5-

Mrs. Maher found herself located outside the residence with no keys or other means to gain entrance of the otherwise locked residence. Mr. Maher had no knowledge when he drove away that Mr. Maher had been locked out of the residence.

14.    Mrs. Maher had no idea when Mr. Maher would be returning that morning and felt extremely isolated and cold standing outside of the residence on the morning and took it upon herself to break into the residence by forcing the front door of the residence open and in the process breaking the door in one or more places and also scratching and otherwise bruising her neck and should in the process of forcing open said front door to gain entrance to the residence.

15.    Shortly hereafter when Mrs. Maher had gained access to the residence, Officer Renninger arrived at the residence at approximately 3:00 a.m. Saturday morning, July 16, 2005, in response to a telephone call by and unidentified individual for the allege purpose of determining what if anything had been going on at the Maher residence earlier in the morning. Apparently, previously there had been one or more telephone calls to the residence by various unnamed individuals and during one or more of these telephone calls Mr. Maher had spoken to one or more individuals.

16.    When Officer Renninger entered the house he proceeded to investigate the entire premises to determine if Mrs. Maher was the only individual in the residence. He did this in spite of the fact that he had already been told by Mrs. Maher that she was the only person in the residence.

-6-

17. For the next hour or so Officer Renninger remained on the Maher premises interviewing Mr. Maher and also apparently took several photographs of Mr. Maher, Particularly of her neck area which she had scratched breaking into the residence earlier in the morning. Office Renninger informed her during the course of their conversation that he was related to Magisterial District Judge Rapp. He also informed her that he might have arrested Mr. Maher if he was home believing that Mrs. Maher had suffered her injuries as a result of a domestic violence incident even though he had been informed by Mrs. Maher that her injuries had occurred when she forced her way into the locked residence.

18. Mr. Maher returned to the residence a short while after Officer Renninger left the residence. He had a lengthy conversation with Mrs. Maher as to what had occurred after he had driven away from the residence. After said conversation the couple went to bed without any further incident.

19. Northing of further relevance or importance happened until the following Tuesday evening, July 19, 2005 at approximately 7:30 p.m. The Plaintiffs were home alone watching a movie. The couple had been together all day that day celebrating Mrs. Maher's birthday which had been the day before.

20. At approximately 7:30 p.m, Officer Sabo of the Salisbury Township Police Department rang the front door bell. Mr Maher went to answer the door and was asked by Offier Sabo to exist the premises. Mrs. Maher then came to the front door when Mr.

-7-

Maher did not immediately return. Both Mr. & Mrs. Maher were informed that Officer

Sabo had an arrest warrant for Mr. Maher, but upon inquiry by Mr. Maher he refused

to inform him as to what charges he was being arrested. Mr. Maher was not informed

of his Miranda rights but made no statements since he was not so informed as to what

was going on.

21.    Both Plaintiffs saw that Officer Sabo was accompanied by two other unnamed police

officers, one of whom was approximately fifteen (15) feet away at a corner of the

house with a drawn firearm even though no one had resisted arrest or even made any

threatening comments to Officer Sabo or to either of the other two officers.

22.    Mr. Maher became hysterical when she realized that Mr. Maher was being arrested.

Officer Sabo was proceeding to handcuff and otherwise shackle Mr. Maher even

though Mr. Maher was offering no resistance to going with the officers to be formally

charged with the then unnamed alleged offenses. None of this made any sense to the

Mahers since it was known in the community that Mr. Maher was a well recognized

member of the Bar Association of Lehigh County wand also a former member of the

Board of Commissioners of Lehigh County.

23.    Mrs Maher pleaded with Officer Sabo and the other unnamed officers not to arrest her

husband in that he had done nothing and they were at home watching a movie and

otherwise celebrating her birthday. All of this was to no avail since the officers

proceeded to finish restraining Mr. Maher and took him away to be booked and then

-8-

otherwise processed. Mr. Maher attempted to comfort his wife as best he could given his present situation. The Mahers were told by the officers upon questioning by Mr. Maher that he would eventually be taken to night court in the City of Allentown for a preliminary arraignment. Mr. Maher quickly tried to explain to his new wife (the Plaintiffs had only been married approximately a month before and Mrs. Maher was not a native of the area) as to where night court was located.

24.    Subsequently, Mr. Maher was taken to the Salisbury Township Police Office and formally "booked" and given a copy of charges against him. Mr. Maher informed the officers that he did not have his reading glasses with him with which he normally reads legal documents. The officers offered not relief to Mr. Maher and in fact failed to take off his restrains so that he could hold the documents or otherwise adjust it to that he could better read it. Somehow, he managed to ascertain that he was being charged with simple assault and harassment.

25.    Thereafter after spending some time in the Salisbury Township lock-up, he was taken—still handcuffed and otherwise shackled—to night Court located at 506 Law Street, City of Allentown to meet with an be preliminarily arraigned before whichever Magistrate was then presiding that evening. Mr. Maher was transported from the Salisbury Police Department to night Court in the Salisbury Township canine vehicle with the dog in the vehicle near him and the window rolled down in the vehicle on a warm July summer evening..

-9-

26.     As the situations would have it, Magisterial District Judge Karen C. Devine who

        normally presided at that location during regular business hours was presiding over

        night Court that evening. Mr. Maher was taken into the courtroom and left there with

        numerous other arrested persons to await disposition by Magistrate Devine.

27.     Approximately forty minutes after arrival at night court, or approximately 9:30 p.m.

        He met wit Magistrate Devine who sat across form him at a counsel table located in

        the office. Magistrate Devine asked Mr. Maher if he was waiving the formal reading

        of the charges and when he replied "Yes" she asked him how he was pleading to the

        charges. He informed her that he was pleading "Not Guilty?"

28.     Mr. Maher then attempted to explain who he was and the fact that his wife—who had

        found the location of night court with the assistance of a friend of Mr. Maher—was

        apparently being kept out of the courtroom. In response Magistrate Devine stated" I

        am well aware of who you are."

29.     Mr. Maher then stated that while the Affidavit of Probable Cause was probably one of

        the worst he had even seen in early 30 years of practice, the major purpose of the

        preliminary arraignment was to set bail for the forthcoming preliminary hearing and

        and any subsequent procedural events that might be necessary. He explained that he

        was probably the most recognized member of the public that h ad even appeared before

        Magistrate Devine in the approximately two plus years she had been a magistrate. In

        spite of the fact that she had previously stated she knew was he was, Mr. Maher told

                                              -10-

her of facts regarding his law practice and his long-time residence in the community and that he was a former Lehigh County Commissioner.

30. Magistrate Devine then for whatever reasons she had (ignoring the prior colloquy between them) stated that she was going to set a straight cash bail of $5,000.00, impose a no contact provision condition as to bail and remand Mr. Maher to the Lehigh County Prison overnight as a "cooling off period." Mr. Maher then attempted to remind Magistrate Devine that the alleged incident had occurred over 3 ½ days before than this his wife, the alleged victim was not permitted in the courtroom to state that she did not want any no contact provision between them and he was not allowed to return to his residence where he had lived for most of the last eleven (11) years. Magistrate Devine stated that Mr Maher given who he was would probably be given a minimum bail or even released on his own recognizance the next morning, but she was imposing the "cooling off period" for this evening apparently believing Mr. Maher would have to spend the night in prison.

31. Mr. Maher was then taken to the Lehigh County Prison and was being processed into the main facility when he made contact with a bail bondsman his wife had contacted to bail him out of prison. Mr Maher had to spend another hour or two in a holding cell in the prison before he was bailed out. Apparently Magistrate Devine attempt do dissuade the bail bondman from bailing Mr. Maher out of prison, but when said bail bondsman persisted, she signed the paperwork releasing him from the prison at

-11-

approximately 12:45 a.m., Wednesday, July 20, 2005.

32.   It took about an hour to complete the paper work with the bail bondsman. However,
      due to the inappropriate no contact bail provision and exclusion from his home, Mr.
      Maher had nowhere to go. Mrs. Maher and a female friend of the couple went to the
      marital home to obtain clothes and other items for Mr. Maher. Upon arrival at the
      marital home, Mrs. Maher discovered a Salisbury Police cruiser and two officer sitting
      nearby the Maher residence. As she approached the vehicle the two officers drove
      away.

33.   During the Courts of the early morning hours of July 20, 2005, Mr. Maher prepared a
      Petition for Bail Modification at his then office in Palmerton. He and Mrs. Maher
      separately went to the Lehigh County Courthouse. Mr. Maher went to meet with either
      the sitting Motion's Judge or the Judge assigned to oversee either Magistrate Rap
      and/or Magistrate Devine. Mrs. Maher went to the District Attorney's Office to met
      with one or more assistant district attorneys to plead her case that Mr. Maher be
      permitted to return home until his preliminary hearing.

34.   Mr Maher subsequently appeared before the Hon. William E. Ford wit his petition.
      Judge Ford recognizing why Mr Maher was before him since word of his arrest the
      evening before had apparently been widely disseminated, requested Mr. Maher to meet
      with the District Attorney's Office and/or appear before Magistrate Rapp who had
      executed the arrest warrant to discuss a bail modification. A short time latter the

-12-

District Attorney's Office verbally agreed that the no contact provision would be

lifted pending a formal order of the Court of Common Pleas of Lehigh County.

35. At about the same time as Mr. and Mrs. Maher were in the Lehigh County Courthouse,

Magistrate Rapp who had issued Mr. Maher'a arrest warrant and was Mr. Maher's

opponent in the recently concluded primary election, recused himself from further

involvement in the case. Subsequently, the case was assigned to Magistrate Charles

Crawford and at the time Mr Maher's preliminary hearing was finally scheduled to be

heard on December 8, 2005, the Commonwealth withdrew all charges.

36. It appears that the entire arrest sequence came about because Mr Maher had taken the

action of running for Magistrate in Salisbury Township against Officer Renninger's

relative, Magistrate Anthony G. Rapp, Jr. and advocated during his candidacy that he

was the more qualified candidate due to the fact that he was an attorney with many

years of experience and his position that the public would be best served if all

magistrates were required to be licensed attorneys just as judges of all the other courts

in Pennsylvania are required to be so licensed.

37. The Salisbury Township Police Department has a long-standing custom, policy,

practice and history of abusing its citizens for their own ends. This policy and history

were shown in 1998 when one or more of the then Salisbury Police Officers falsely

arrested well recognized and outstanding citizens, Charles Russoli and Maguerite

Russoli, whose charges like Mr. Maher's were later dismissed. The Russoli's case with

-13-

the Township of Salisbury and its police department and several of its officers was

filled in this Honorable Court a 98-cv-02688 and was ultimately settled in December

2002 while in the course of trial.

38.     The action or conduct of the Defendants resulted in severe psychological injuries to

the Plaintiff, Mr Maher, as more fully described hereinafter, as well as economic losses

and damages to his professional reputation and his reputation in the community.

39.     Plaintiff, Juli' A. D'Ancona-Maher, has suffered the loss of companionship of her

husband due to his psychological injuries.

### COUNT I.
### VIOLATION OF 42 U.S.C. § 1983

### PLAINTIFF, JOSEPH P. MAHER

v.

### ALL DEFENDANTS.

40.     Plaintiffs hereby incorporated by reference all the allegations contained in paragraphs

1 though 39 above as though the same had been set forth fully at length herein.

41.     Prior to July 19, 2005, the Township of Salisbury developed and maintained policies

and/or customs exhibiting deliberate indifference to the constitutional rights of per son

in Salisbury, which caused or directly contributed to the violations Plaintiffs' rights.

42.     It was th policy and/or custom of the Township of Salisbury to inadequately and

improperly investigate citizen complaints of police misconduct, and acts of misconduct

were instead ignored, tolerated and in some instances even rewarded by the Township

-14-

of Salisbury, including th preclusion of public access to pertinent police reports.

43. As far back as 1998, involving the aforesaid Russoli incident, and even subsequent
    incidents to July 19, 2005, including but not limited to a more recent incident in which
    police officers intimidated Mrs. Maher into filing a false Protection from Abuse
    complaint against Mr. Maher in October 2006 telling her that if she did not do so that
    she could lose her children, the Defendants have covered-up incidents from the press
    and the public and interested persons for the protection of the members of the police
    department, including the individual Defendants, the Police Department and the
    Township of Salisbury to avoid taking responsibility for the individual and collection
    actions.

44. It was the policy and/or custom of the Township of Salisbury to inadequately supervise
    and train its police officers, including, the Defendant officer, thereby failing to
    adequately discourage and present further constitutional violations on the part of its
    police officers. The Township did not require appropriate in-service training or re-
    training of officers who were known to have engaged in police misconduct.

45. As a direct and proximate result of the above described polices and customs, police
    officers of The Township of Salisbury, including the individual Defendant office,
    believe that his improper and unlawful actions would not be properly monitored by
    supervisory officers and that misconduct would not be investigated or sanctioned, but
    instead would be tolerated and cover-up.

-15-

46.    The above-described policies and custom demonstrate a deliberate indifference on the

part of policy makes of the Township of Salisbury to the constitutional rights of

citizens and person within the Township, including the Plaintiffs, and were the cause

of the violations of Plaintiff's rights alleged herein and hereinafter.

47.    The Defendants alleged conspiratorial actions included but are not limited to the

following actions:

      a.    Concealing form the public the identity of the perpetrator;

      b.    Refusing to disclose the complete accident/incident report;

      c.    Failing to discipline or retrain Defendant Renninger following the

         dismissal of all charges; and

      d.    Failing to discipline or retrain superior officers, including the Defendant

         for their failure to discipline or retrain subordinates who engaged in

         misconduct while on duty.

48.    The conspiratorial actions of Defendants in conjunction with the false charges and

malicious  prosecution constitute and provide Plaintiffs with a cause of actions for the

violation of their constitutional rights.

49.    Following the filing of charges and the subsequent dismissal, the Defendants engaged

in a course of conduct calculated to limit the Defendants' liability for the bring of false

charges against Mr. Maher and further calculated to deprive Mr. Maher of his federally

protected due process right to access to the courts, to fairly investigate and litigate the

-16-

underlying misconduct of Defendant Regginger.

50.    Cover-ups such as in this case and the failure to take appropriate actions have occurred

with this department with such sufficient frequency that behavior of the individual

Defendant has become a part of the Township of Salisbury's policy or custom.

51.    Such conduct also demonstrates that supervisory liability exists because any officer

and especially a supervisory officer who, as herein, has acknowledged said unlawful

and/or tortuous activity ratifies that activity by either failing to take appropriate

corrective actions or has by his activity of covering up the underlying conduct become

himself liable for the conduct.

52.    As a direct an approximate result of the aforesaid conduct and actions of the

Defendants the Plaintiff has suffered the following injuries, damages and losses:

   a.    emotional and psychological distress and trauma;

   b.    mental anguish;

   c.    psychic pain and suffering;

   d.    severe fright, horror and grief;

   e.    shame, humiliation and embarrassment;

   f.    severe anger, chagrin, disappointment and worry;

   g.    the need to expend funds for medical care and treatment; and

   h.    justified punitive damages, both factually and legally because

        of the outlandish and outrageous conduct, actions and omissions of one

-17-

or more of the Defendants.

WHEREFORE, Plaintiff respectfully request that this Honorable Court award judgment against the Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand ($150,000.00) Dollars limit for adjudication in this jurisdiction.

## COUNT II
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### PLAINTIFF JOSEPH P. MAHER

v.

### ALL DEFENDANTS

53.    Plaintiff hereby incorporates by reference all the allegations contained in paragraphs 1 through 52 above as though the same had been set forth fully at length herein.

54.    The aforesaid extreme and outrageous conduct, acts or omissions of the Defendants in the scope of their employment, or acting independently, were calculated, designed and intended by the Defendants to intentionally inflict deliberate emotional distress, psychological trauma and psychic pain and suffering upon the Plaintiff and to instill in his mind an immediate and permanent sense of fear and trepidation and said conduct, acts or omissions surpass all bounds of decency universally recognized in a civilized society.

55.    As a direct and proximate result and consequence of the aforesaid conduct, acts or omissions of the Defendants, which constitute extremely outrageous conduct, the Plaintiff has suffered, is suffering or will continue to suffer for an indefinite time into

-18-

the future the following:

   a.  emotional and psychological distress and trauma;

   b.  mental anguish;

   c.  psychic pain and suffering;

   d.  severe fright, horror and grief;

   e.  shame, humiliation and embarrassment;

   f.  severe anger, chagrin, disappointment and worry;

   g.  the need to expend funds for medical care and treatment; and

   h.  justified punitive damages, both factually and legally, because of the outlandish and outrageous conduct, actions and o missions of one of more of the Defendants.

WHEREFORE, Plaintiff, respectfully request that this Honorable Court award judgment against the Defendants, jointly and severally, nan amount in excess of the One Hundred Fifty Thousand ($150,000.00) Dollars limit for adjudication in this jurisdiction.

**COUNT III**
NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

PLAINTIFF JOSEPH P. MAHER

v.

ALL DEFENDANTS

56. Plaintiff hereby incorporates by reference all the allegations contained I paragraphs 1 though 55 above as though the same had ben set forth fully at length herein.

-19-

57.    The aforesaid negligent conduct, acts or omissions of the Defendants in the scope of their employment or official duties or acting independently, including the acceptance, condoning, toleration or encouragement of such conduct, resulted in the negligent infliction of emotional distress, psychological trauma, and psychic pain and suffering upon the Plaintiff and id instill in his mind an immediate and permanent sense of fear and trepidation.

58.    As a direct and proximate result and consequence of the aforesaid conduct, acts or omissions of the Defendants, which constitute extremely outrageous conduct, the Plaintiff has suffered, is suffering or will continue to suffer for an indefinite time into the future the following:

   a.    emotional and psychological distress and trauma;

   b.    mental anguish;

   c.    psychic pain and suffering;

   d.    severe fright, horror and grief;

   e.    shame, humiliation and embarrassment;

   f.    severe anger, chagrin, disappointment and worry;

   g.    the need to expend funds for medical care and treatment; and

   h.    justified punitive damages, both factually and legally, because of the outlandish and outrageous conduct, actions and o missions of one of more of the Defendants.

-20-

WHEREFORE, Plaintiff, respectfully request that this Honorable Court award judgment

against the Defendants, jointly and severally, nan amount in excess of the One Hundred Fifty

Thousand ($150,000.00) Dollars limit for adjudication in this jurisdiction.

## COUNT IV
## MALICIOUS PROSECUTION

### PLAINTIFF JOSEPH P. MAHER

v.

### ALL DEFENDANTS

59.    Plaintiff hereby incorporates by reference all the allegations contained in paragraphs

1 through 58 above as though the same had been set forth fully at length herein

60.    The actions, conduct and omissions of the Defendants, as described hereinbefore,

constitute a malicious prosecution  because the criminal prosecution was initiated and

continued by the Defendants for their own malicious purpose and without probable

cause.  The prosecution of the Plaintiff was to hide the real motive behind the arrest

and an attempt to intimate the Plaintiff into not pursuing his own future political

activities.

61.    Plaintiff believes and therefore avers, that the entire course of conduct of the

Defendants was pursued for their own malicious purpose, which was other than to

bring an accused person to justice, and was designed or calculated to punish the

Plaintiff and impugn his character under the guise of enforcement of law.

-21-

62. As a direct and proximate result of the aforesaid actions and omissions of all Defendants in developing, implementing and carrying out the aforesaid plan, policy or continuing course of conduct, the Plaintiff has suffered the following injuries and losses and is entitled to the following damages:

    a.    loss of the use, benefit and enjoyment of life and personal freedom of movement and association;

    b.    physical and mental pain and suffering and anguish and embarrassment and humiliation;

    c.    loss of valuable and inalienable rights to be free from malicious prosecution as well as free from loss of personal and familial privacy;

    d.    loss of income and future earning capacity; to include injury to Plaintiff's business reputation, injure his reputation as an attorney all of which was directly has directly affected Plaintiff's ability to conduct business and earn income.

    e.    loss of reputation both professionally and personally;

    f.    punitive damages which are justified by the outlandish and outrageous conduct, actions and omissions of one or more of the Defendants as aforesaid.

    g.    attorney's fees and costs to defend against the criminal action;

    h.    the need to expend funds for medical care and treatment;

-22-

      i.     emotional and psychological distress and trauma;

      j.     psychic pain and suffering;

      k.    severe fright, horror and grief;

      l.     shame; and

      m.   severe anger, chagrin, disappointment and worry.

WHEREFORE, Plaintiff, respectfully request that this Honorable Court award judgment

against the Defendants, jointly and severally, nan amount in excess of the One Hundred Fifty

Thousand ($150,000.00) Dollars limit for adjudication in this jurisdiction.

## COUNT V
## ABUSE OF PROCESS

### PLAINTIFF JOSEPH P. MAHER

v.

### ALL DEFENDANTS

63.    Plaintiff hereby incorporates by reference all the allegations contained in paragraphs

      1 through 62 above as though the same had been set forth fully at length herein

64.    The actions, conduct and omissions of the Defendants as described hereinbefore

      constitute an abuse of criminal process because of the malicious prosecution of the

      Plaintiff by the Defendants and their continuing course of tortious conduct fro July 19,

      2005, until the exoneration of the Plaintiff, which was calculated and designed by the

      Defendants not for the lawful and legitimate purpose of bringing Plaintiff to justice,

-23-

but solely for their personal and malicious motives to utilize, prosecute and or inflict pain and punishment on the Plaintiff.

65.    As a direct and proximate result of the aforesaid actions and omissions of all Defendants in developing, implementing and carrying out the aforesaid plan, policy or continuing course of conduct, the Plaintiff has suffered the following injuries and losses and is entitled to the following damages:

       a.     loss of the use, benefit and enjoyment of life and personal freedom of movement and association;

       b.     physical and mental pain and suffering and anguish and embarrassment and humiliation;

       c.     loss of valuable and inalienable rights to be free from malicious prosecution as well as free from loss of personal and familial privacy;

       d.     loss of income and future earning capacity; to include injury to Plaintiff's business reputation, injure his reputation as an attorney all of which was directly has directly affected Plaintiff's ability to conduct business and earn income.

       e.     loss of reputation both professionally and personally;

       f.     punitive damages which are justified by the outlandish and outrageous conduct, actions and omissions of one or more of the Defendants as aforesaid.

-24-

g.    attorney's fees and costs to defend against the criminal action;

h.    the need to expend funds for medical care and treatment;

i.    emotional and psychological distress and trauma;

j.    psychic pain and suffering;

k.    severe fright, horror and grief;

l.    shame; and

m.    severe anger, chagrin, disappointment and worry.

## COUNT VI
## FALSE ARREST

### PLAINTIFF JOSEPH P. MAHER

v.

### ALL DEFENDANTS

66.    Plaintiff hereby incorporates by reference all the allegations contained in paragraphs
       1 through 65 above as though the same had been set forth fully at length herein

67.    The actions and conduct of the Defendants as described hereinbefore constitute a false
       arrest as the arrest of the Plaintiff on July 19, 2005 was accomplished without probable
       cause; according, there was not need to restrain Plaintiff Joseph P. Maher, to place
       Plaintiff Joseph P. Maher in handcuffs and transport him via police car to night court
       and to Lehigh County Prison or to continue to deprive him of his freedom as part of
       a full custodial arrest.

68.     As a direct and proximate result of the aforesaid actions and omissions of all

        Defendants in developing, implementing and carrying out the aforesaid plan, policy

        or continuing course of conduct, the Plaintiff has suffered the following injuries and

        losses and is entitled to the following damages:

        a.      loss of the use, benefit and enjoyment of life and personal freedom
                of movement and association;

        b.      physical and mental pain and suffering and anguish and embarrassment
                and humiliation;

        c.      loss of valuable and inalienable rights to be free from malicious
                prosecution as well as free from loss of personal and familial privacy;

        d.      loss of income and future earning capacity; to include injury to
                Plaintiff's business reputation, injure his reputation as an attorney all of
                which was directly has directly affected Plaintiff's ability to conduct

        e.      loss of reputation both professionally and personally;

        f.      punitive damages which are justified by the outlandish and outrageous
                conduct, actions and omissions of one or more of the Defendants as
                aforesaid.

        g.      attorney's fees and costs to defend against the criminal action;

        h.      the need to expend funds for medical care and treatment;

        i.      emotional and psychological distress and trauma;

                                    -26-

j.     psychic pain and suffering;

k.     severe fright, horror and grief;

l.     shame; and

m.    severe anger, chagrin, disappointment and worry.

## COUNT VII
## LOSS OF CONSORTIUM

### PLAINTIFF JULI' A. D'ANCONA-MAHER

v..

### ALL DEFENDANTS

69.    Plaintiff hereby incorporates by reference all the allegations contained in paragraphs
       1 through 68 above as though the same had been set forth fully at length herein

70.    The Plaintiffs are Husband and Wife and were married at the time and the date of the
       incidents as herein described.

71.    Plaintiff Juli' A. D'Ancona-Maher was forced to stand by and witness the illegal arrest
       and detention by the Defendants of her husband and to endure the publication and
       republication of false information as to the incident of July 19, 2005 and the cause or
       causes of same, the outrageous and intentional and/or negligent nature of which caused
       her extreme emotional and psychic distress from which she continues to suffer.

72.    As a direct and proximate result of the aforesaid actions and omissions of all
       Defendants in developing, implementing and carrying out the aforesaid plan, policy

-27-

or continuing course of conduct, the Plaintiff Juli' A. D'Ancona-Maher has suffered the following injuries and losses and is entitled to the following damages:

    a.    Plaintiff Juli' A. D'Ancona-Maher has been deprived of the consortium, companionship and services of the Plaintiff Joseph P. Maher as a spouse;

    b.    Plaintiff Juli' A. D'Ancona-Maher has been deprived of the use, benefit and enjoyment of life;

    c.    Plaintiff Juli' A. D'Ancona-Maher has been deprived of her spouse's earnings and loss of future earing capacity; and

    d.    Plaintiff Juli' A. D'Ancona-Maher has been required and will continue to in the future expend large sums of money for her spouse's medical care, treatment and supplies, medication and rehabilitation.

Respectfully submitted,

Joseph P. Maher, Esq.
Attorney I.D. # 23693
Attorney for Plaintiffs

Date: July 19, 2007

3225 Alton Street
Allentown, PA. 18103-6456
(484) 264-8005
Fax (610) 791-5078
E-Mail: joemaher@fast.net
       jjdm61705@fast.net